IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

PANOWICZ V. PANOWICZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CAROL ROSE PANOWICZ, APPELLEE,

V.

ROBERT EDWIN PANOWICZ, APPELLANT.

Filed August 29, 2017.    No. A-16-750.

Appeal from the District Court for Howard County: KARIN L. NOAKES, Judge. Affirmed.

Mitchell C. Stehlik, of Lauritsen, Brownell, Brostrom & Stehlik, P.C., L.L.O., for appellant.

John B. McDermott, of Shamberg, Wolf, McDermott & Depue, for appellee.

INBODY, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

### INTRODUCTION

Robert Edwin Panowicz appeals from an order of the district court for Howard County dissolving his marriage to Carol Rose Panowicz. Robert challenges certain aspects of the court's division of property. Based on the reasons that follow, we affirm.

### BACKGROUND

Robert and Carol were married on October 9, 1989. They had two children, both of whom have reached the age of majority. On June 29, 2015, Carol filed a complaint for dissolution of marriage.

Trial was held on June 1, 2016. There were two appraisals of the marital home entered into evidence. The first appraisal was offered into evidence by Carol and it valued the home at

$250,000. The second appraisal was offered by Robert and it valued the marital home at $230,000. Carol's appraisal had been conducted in December 2015, and Robert's had been conducted in January 2016.

There was also evidence presented about a pension Robert had through Central States Pension Fund. At the time of trial, Robert was receiving approximately $3,600 per month from the pension. He started receiving distributions from the pension when he retired in 2014. Robert began earning his pension prior to the marriage, but earned a majority of the pension during the marriage.

Robert testified that the pension was having financial challenges and he did not know how long he would continue receiving distributions from the pension or in what amount. He also provided a letter from Central States Pension Fund, dated October 1, 2015, stating the challenges the pension was facing and that a proposed "rescue plan" had been submitted to the United States Department of Treasury. It stated that if the proposal was accepted, his monthly benefits would decrease. Another exhibit was entered into evidence stating that the Department of Treasury had denied the pension's proposed plan. Robert testified that based on the information he had been provided, the Central States Pension Fund could be out of funds within ten years. At the time of trial however, Robert's monthly benefits had not changed.

On July 26, 2016, the trial court entered a decree, dissolving the parties' marriage and dividing the marital estate. The court determined that the value of the home was $240,000. The court awarded Carol 50 percent of the pension benefits earned from contributions made during the marriage, and ordered Carol to prepare and submit a Qualified Domestic Relations Order to the court within 30 days. It also ordered Robert to pay a property settlement to Carol in the amount of $87,921 to equalize the property division, and entered judgment against Robert for such amount.

## ASSIGNMENTS OF ERROR

Robert assigns that the trial court erred in (1) determining the value of the marital home, (2) awarding Carol 50 percent of his pension earned during the marriage, and (3) ordering a property judgment against him and in favor of Carol in the amount of $87,921.

## STANDARD OF REVIEW

In an action for dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of discretion. *Sitz v. Sitz,* 275 Neb. 832, 749 N.W.2d 470 (2008). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Boyer v. Boyer*, 24 Neb. App. 434, 439, 889 N.W.2d 832, 839 (2017), *review denied* (Mar. 7, 2017).

ANALYSIS

*Value of Marital Home.*

Robert first assigns that the trial court erred in determining the value of the marital home to be $240,000. Robert argues that the trial court abused its discretion because there was no evidence that the home was valued at $240,000. He also asserts that the appraiser who valued the home at $230,000 was more credible.

There were two appraisals entered into evidence. The appraisal offered by Carol valued the home at $250,000 and the appraisal offered by Robert valued the home at $230,000. The court split the difference and valued the home at $240,000. Although there was no specific evidence that the home was valued at $240,000, we cannot say that the court abused its discretion in valuing the home at an amount in between the appraisal amounts presented by the parties. See *Sitz v. Sitz, supra* (an appellate court reviews de novo on the record the trial court's property division, but such determination is initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of discretion). See also *Bock v. Dalbey*, 19 Neb. App. 210, 809 N.W.2d 785 (2011), *reversed on other grounds*, 283 Neb. 994, 815 N.W.2d 530 (2012) (Court did not abuse its discretion in valuing parties' house higher than requested by plaintiff, but lower than that requested by defendant).There is no merit to Robert's first assignment of error.

*Robert's Pension.*

Robert next assigns that the trial court erred in awarding Carol 50 percent of the benefits from the pension plan earned during the marriage. Robert argues that because there was no evidence presented as to the total value of the pension, it was error to order a distribution of pension benefits.

The evidence showed that Robert has a pension through Central States Pension Fund and that he was receiving $3,600 per month from the pension. The pension was having financial difficulties and Robert did not know how long he would continue to receive distributions from the pension or in what amount. However, at the time of trial, he was still receiving the same $3,600 per month that he had been receiving since distributions started in 2014.

The court ordered that Carol would receive 50 percent of the pension earned during the marriage. Robert receives the pension as a set monthly benefit, so the court awarded Carol 50 percent of the marital portion of the monthly benefit. Carol will not get 50 percent of the $3,600 per month Robert receives but rather, 50 percent of the monthly amount determined to have been earned during the marriage. Robert testified that he paid into the pension for a total 36 years, and 27 of those years were during the marriage. The $3,600 per month will be reduced based on the months of marriage compared to the total months Robert contributed to the pension. Carol then gets 50 percent of the reduced amount.

Because Robert receives a set amount every month, there was no need to know the total value of the pension before distributing the benefits. We conclude that the trial court properly awarded Carol 50 percent of the marital portion of the monthly benefit, and did not abuse its discretion in distributing Robert's pension benefits.

- 3 -

*Property Judgment.*

Finally, Robert assigns that the trial court erred in ordering a property judgment against him and in favor of Carol in the amount of $87,921. He argues that the court's distribution of assets and liabilities, resulting in the property judgment, is flawed because of its use of an incorrect value of the marital home and because the court failed to include the distribution of the pension.

Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Patton v. Patton*, 20 Neb. App. 51, 818 N.W.2d 624 (2012). Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Id.*

The court's equalization worksheet attached to the decree shows that the court clearly intended the parties to each have approximately 50 percent of the marital estate. The court calculated the assets and liabilities that it awarded to each party, determined that Robert was netting $175,843 more than Carol (which does not include any amount for the Central States Pension Fund), divided that amount in half, resulting in a judgment amount of $87,921. The amount of the property judgment equalized the distribution of the marital estate such that each party received one-half.

As we previously determined, the court did not abuse its discretion in valuing the home at $240,000. We also determined that the court properly awarded Carol 50 percent of the marital portion of Robert's monthly pension benefit. Because there was no total value of the pension, the court did not err in failing to include the distribution of the pension on its equalization worksheet. Robert's final assignment of error is without merit.

CONCLUSION

We conclude that the trial court did not err in valuing the marital home at $240,000, in awarding Carol 50 percent of Robert's pension earned during the marriage, or in ordering a property judgment against Robert and in favor of Carol in the amount of $87,921. Accordingly, the decree of dissolution is affirmed.

AFFIRMED.